STATE OF NEBRASKA, APPELLEE, V.
DELBERT G. LEISY, APPELLANT.
295 N.W.2d 715

Filed August 22, 1980. No. 43057.

Laurice M. Margheim of Bayer and Margheim for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

Defendant Leisy was charged in the District Court for Box Butte County, Nebraska, with two counts of second degree assault and one count of using a firearm in the commission of a felony. A plea bargain was arranged between the prosecution and the defense which involved the entry of a plea of nolo contendere to the first assault count and the dismissal of the two other charges. After the defendant had been arraigned, informed of his constitutional rights, the effect of a plea of guilty, the possible penalties on the charge, and after inquiry by the court as to the factual basis for the plea, the District Court refused to accept the plea and directed that the case be tried. The defendant was found guilty by a jury and sentenced to a term of 1 year on one of the assault counts and 1 year probation on each of the other two charges.

The defendant then appealed to this court and here assigned and argued the following alleged errors: (1) The district judge abused his discretion in rejecting the plea agreement and refusing to accept the nolo contendere plea; (2) The trial judge deprived the defendant of effective assistance of counsel by refusal to hear argument of counsel in support of the plea agreement; (3) The evidence was insufficient to prove the defendant guilty beyond a reasonable doubt; (4) The instruction on circumstantial evidence was incomplete and erroneous; (5) The defendant was deprived of a fair trial because of the use of perjured testimony by the prosecution and because of inducements given a prosecution witness who was a participant in the crime; (6) The court erred in admitting out-of-court statements made by the defendant because they were exculpatory and hearsay; and (7) The court erred in rejecting the defendant's offer of out-of-court statements of an unavailable witness.

We treat the assignments in the order listed.

The argument that the trial judge abused his judicial discretion in refusing to accept the plea of nolo con-

tendere rests upon these bases: (1) Where both the prosecutor and defense agree that the plea bargain is beneficial, the judge ought to accept it, and for him not to do so is an intrusion on the prosecutorial function; (2) The offer of the plea was clearly voluntarily and intelligently made and the defendant ought not to be put to the added risk and expense of trial; and (3) It is basically unfair to the defendant to permit an accomplice to go free when, had the plea been accepted, both could have been prosecuted.

During the plea agreement discussions before the court and in the course of the evidentiary hearing thereon, the defendant three times asserted his innocence by asserting claims of self-defense. The defendant was 23 years of age and had no prior felony record.

The primary reasons given by the court for rejection of the plea, as we deduce them from the court's comments, were: (1) The assertion of innocence; (2) The defendant's relative youth and inexperience in criminal matters; (3) The acts charged involved violent confrontations between Caucasians and Indians and the facts should be publicly aired; and (4) If the State's version of the crime charged was correct, then a charge greater than that actually filed, to wit, attempted murder in the second degree, Neb. Rev. Stat. §§ 28-201 and 304 (Reissue 1979), would have been justified.

In support of his premise of abuse of judicial discretion, defendant cites: *United States v. Gaskins*, 485 F.2d 1046 (D.C. Cir. 1973); *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973); *Griffin v. United States*, 405 F.2d 1378 (D.C. Cir. 1968); *United States v. Maggio*, 514 F.2d 80 (5th Cir. 1975); *United States v. Martinez*, 486 F.2d 15 (5th Cir. 1973).

This court and others have recognized that a defendant has no absolute right to have his plea of guilty or nolo contendere accepted even if the plea is voluntarily and intelligently made. *State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849 (1977); *Santobello v. New*

*York*, 404 U.S. 257 (1971); *United States v. Bednarski*, 445 F.2d 364 (1st Cir. 1971); *United States v. Martinez, supra.* A plea of nolo contendere or guilty, voluntarily and intelligently made, may be accepted even though a defendant professes his innocence, provided there is a factual basis for a finding of guilty. *North Carolina v. Alford*, 400 U.S. 25 (1970).

The defense has cited only three cases (and no others have been found) in which an appellate court has reversed a conviction after trial and verdict of guilty because of refusal of the trial court to accept a plea of guilty. *United States v. Ammidown, supra; Griffin v. United States, supra; United States v. Gaskins, supra.* (All three cases were decided by the U. S. Court of Appeals, District of Columbia Circuit.) In *Ammidown*, the defendant was charged with murder in the first degree and, pursuant to a plea agreement, he tendered a plea of guilty to murder in the second degree. The crime involved the hired killing of the defendant's wife. The purpose of the bargain was to secure the testimony of Ammidown in order to convict the hired assassin. The trial court rejected the plea because, it held, the public interest required the higher charge. The Court of Appeals held that this constituted an undue interference with the prosecutorial function. That court said: "Where vigorous prosecution of one case threatens to undermine successful prosecution of another, it has traditionally been the prosecutor who determines which case will be pressed to conclusion, and his decision has been given great deference by the courts." *Ammidown, supra* at 621. The following principles have been drawn from that case: "There is a presumption that the determination of the United States attorney with respect to allowing defendant to plead guilty to a lesser included offense is to be followed in the overwhelming number of cases." *Id.* at 616. "When asked to approve guilty plea to lesser included offense judge is free to condemn prosecutor's agreement as a trespass on judicial authority only in a blatant and extreme case,

and in ordinary circumstances change in grading of an offense presents no question of the kind of action that is reserved for the judiciary. Fed. Rules Crim. Prac. rule 11, 18 U.S.C.A." *Id.* at 617.

Earlier, in *Griffin v. United States, supra,* that same court held that a guilty plea to a reduced charge should not be rejected without good reason. In that case, the trial court had refused to accept the plea because the defendant related conflicting versions of the crime, one version indicating that the homicide may have been justified by self-defense. In *United States v. Gaskins, supra,* the trial court rejected the tendered plea because the defendant equivocated as to his guilt.

In *State v. Stewart, supra,* we discussed *Ammidown* and declined to precisely define limits of the lower court's discretion in rejecting a proper plea under a plea bargain and held that, under the facts of that case, there was no abuse of discretion. The facts in the case before us make it clearly distinguishable from those upon which the defendant relies. In this case, the defendant's protestations of innocence were absolute and not equivocal. The plea bargain was not being entered into by the prosecutor for the purpose of securing the conviction of one who had actually committed the crime as in *Ammidown.* Here the one being prosecuted was believed to be the actual perpetrator of the offense and the accomplice was being used as a witness to help gain the conviction. We hold that the trial court did not abuse its discretion in this instance. In *State v. Stewart, supra,* we held, at 497, 250 N.W.2d at 852: "The trial court is afforded a large measure of discretion in deciding whether or not to accept plea bargain arrangements." (Syllabus of the court.)

We do not regard the fact that defendant had to incur additional expense of litigation a matter of sufficient weight to tip the scales. A further reason the defendant's contention cannot be upheld is that there is no evidence that he suffered any prejudice as the result of the rejection of his plea. The maximum penalty for the

two assault charges was 5 years. He could have received a total of 5 years under the plea bargain agreement. In fact, he received a 1-year sentence to be followed by 2 years of probation. There is no reason to believe the court would have given a lesser sentence had the plea been accepted.

The defendant's contention that the trial court deprived the defendant of effective assistance of counsel because it refused to hear arguments of counsel in support of the plea agreement is completely without foundation in the record. The court did initially say that it did not want to hear argument. However, it did, in fact, hear argument and, furthermore, held a special hearing in which the defendant testified to the facts which he believed supported acceptance of the plea.

The defendant's claim that the evidence was insufficient to support the verdict is, likewise, groundless. We will briefly summarize the conclusions which the jury could reach from the evidence and then identify some of the corroborating evidence. The jury could have found that Leisy and a friend, Liberg, the person who testified for the State after dismissal of the charges against him, spent the evening of May 14, 1979, at the Tamarack bar in the city of Alliance, leaving about 1:15 a.m. on May 15. Leisy, after leaving the bar, apparently was told that some Indian men were going about Alliance harassing and assaulting whites. Leisy, with Liberg driving a pickup truck of which Leisy had the use, proceeded to the area of 9th and Emerson Streets in the city of Alliance for the announced purpose of helping his white friends. When they neared the area, Leisy took a .20-gauge shotgun from behind the seat of the pickup and loaded it. There was a crowd of 10 to 20 people in the street, some of whom were Indian. The pickup was forced to stop when one of the group of Indians blocked its passage by moving in front of the pickup. Members of the crowd then began pounding on the pickup and forcibly removed and damaged the

tailgate. One of the group smashed the rear window of the pickup with an ax handle. Leisy pointed the gun upward out the window of the pickup and fired it once in the air. Leisy and Liberg were then able to move on with the pickup.

Meanwhile, Craig Bishop, a white who lived at 9th and Emerson Streets, attracted by the noise of the disturbance, emerged from his home where a party was in progress. His purpose was to act as a peacemaker. Bishop; Creig Wilkins, one of the persons attending the party; Darrell White Crane, an Indian; and three others gathered in a group on 9th Street and were conversing peaceably.

In the meantime, Leisy and Liberg, after driving some distance away, reversed their path and, seemingly bent on revenge for the damage done to the truck, drove back through the intersection of 9th and Emerson at a rather fast rate of speed. As the vehicle passed through the intersection, Leisy fired two shots at the group of six. Bishop, White Crane, and Wilkins suffered pellet wounds.

Leisy, at the trial, testifying in his own defense, described the first confrontation in which his truck was damaged. He admitted firing a shot in the air on that occasion. He claimed to believe that the rear window of the pickup had been broken by a blast from a shotgun fired at the occupants. He denied having driven back through the intersection and having fired the shots which wounded the three persons. He claimed to have no recollection of such an incident and maintained that he simply was not capable of shooting at anyone.

Some of the evidence supporting the State's version of the incident was the following. Liberg was a reluctant witness. The substance of his testimony was that he was driving the pickup and that Leisy was on the passenger side. He saw Leisy pick up the shotgun shells, yellow in color. He described the initial confrontation. He stated that they then drove away and returned, traveling at a high rate of speed. At that time, Leisy had the shotgun

in his hand with the muzzle pointing out the window. As the pickup passed through the intersection, Liberg heard two shots fired from a shotgun. They came directly from his right immediately outside the window of the pickup. He did not actually see Leisy pointing the gun or pulling the trigger. The inference is that he was not looking at Leisy, but looking directly ahead. He would not testify that Leisy had actually fired the shots. However, the inference that Leisy fired the shots is clear.

The victims of the shooting testified to their impression that the shot (they remembered only one) came from the pickup. Two other witnesses, who resided near the intersection and who had observed the first disturbance, testified to their impressions that the shots were fired from the passing pickup.

The morning following the incident, after the defendant had been questioned by investigating officers, he went to Liberg's home and asked him to tell the same story that he had given the investigators. Essentially, that was to admit the first confrontation and firing the shot in the air and to deny the later shooting.

A .20-gauge pump action shotgun was found in Leisy's possession. Testimony by a firearms identification expert indicated that three yellow .20-gauge shotgun shell casings, two of which had been found at the intersection of 9th and Emerson Streets and the third a block away, had been fired and ejected from Leisy's shotgun.

Two voluntary statements by Leisy, given to the investigating officers, were received in evidence. These contained admissions against interest and their equivocal nature tended to cast doubt upon Leisy's veracity.

The applicable principle is: "In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine

the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it." *State v. Carter*, 205 Neb. 407, 288 N.W.2d 35 (1980) (syllabus of the court).

The defendant complains that the court erred in refusing his requested instruction relative to circumstantial evidence. The court followed pattern instruction NJI 14.50 and instructed as follows:

"Evidence is either direct or circumstantial.

"Evidence is direct when a witness testifies from his own personal knowledge concerning a material element of the crime charged. Evidence is circumstantial when it relates to the existence or nonexistence of facts from which a material element of the crime charged may be inferred and when that inference usually and reasonably follows according to the common experience of mankind.

"Whenever circumstantial evidence is relied upon to establish any material element of a crime, it is necessary that the facts essential to the conclusion sought must be proved by competent evidence beyond a reasonable doubt, and when taken together, must be of such character as to be consistent with each other and with the conclusion sought to be established thereby and inconsistent with any reasonable hypothesis of innocence.

"Therefore, notwithstanding that some of the evidence may be circumstantial, if you are satisfied beyond a reasonable doubt from all the evidence that the evidence cannot be accounted for upon any reasonable theory consistent with the innocence of defendant and that it permits of no reasonable conclusion other than that of the guilt of the defendant, then you should so find. If you do have such a reasonable doubt, you must find him not guilty."

The requested instruction was identical to the pattern instruction except that it added to the third paragraph

the sentence: "Any fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the Defendant."

It is true that some of the cases discussing the circumstantial evidence rule contain the sentence which the defendant requested be added to the instruction. However, that sentence cannot be taken out of the context of the cases. An examination of the opinions in which the statement is used, e.g., *State v. Faircloth,* 181 Neb. 333, 148 N.W.2d 187 (1967), and *State v. Doyle,* 205 Neb. 234, 287 N.W.2d 59 (1980), indicates that the reference to "any fact or circumstance" is intended to describe a "material element" necessary to proof of the particular crime, e.g., intent, knowledge, possession, or an ultimate fact, and not to each part of a collection of circumstances or separate facts which, taken together, tend to prove the "material element."

In this case, the facts relied upon by the State to show that the defendant did the shooting are partly circumstantial and partly direct. Liberg's testimony was direct evidence, as was the evidence connecting the expended shell casings with the defendant. Merely because no eyewitness or expert could testify that the pellets which struck the victims came from Leisy's gun does not require a finding the Leisy did not fire the weapon. We illustrate further: If the defendant had been charged with different crimes of which wounding was a material element, the facts and circumstances would permit the fact that the pellets came from the gun to be arrived at inferentially.

The defendant's contention that the conviction was procured by the prosecution's knowing use of perjured testimony of Liberg is not warranted by the record. It is apparent from Liberg's interrogation by one of the investigating officers that Liberg did not want to tell what he knew about Leisy's part in the shooting. Liberg had served a term in the penitentiary because someone had "told" on him. He did not want to be an informant. He was motivated to become a reluctant witness in order

to save himself from a possible second term in the penitentiary. He was not asked to lie by anyone associated with the prosecution. He was asked to tell the truth. The claim that perjury was solicited is unjustified and should not have been made in the brief.

The facts concerning Liberg's background, motivation, credibility, and inconsistent statements were all before the jury. It was for them to determine the truth. The verdict indicates that they accepted his trial testimony. The clear import of his testimony is that, had he been willing, he could have truthfully testified that Leisy fired the shotgun twice as they drove through the intersection the second time.

Among the witnesses for whom subpoenas were issued by the defense was a woman who, with her family, resided near 9th and Emerson. Her husband was called by the defendant and did testify. During the examination of the husband, the defense began to lay a foundation to show that the wife was so emotionally upset by having been a witness to the affair that she was incapable of testifying. Objection to this foundation testimony was made by the prosecution. The court, in response to the objection, stated: "Well, would you stipulate that she's unavailable for the purposes of testifying? That's the purpose of his inquiry I think," to which the prosecutor replied: "Sure."

The defense did not call the wife to testify although she had responded to the subpoena and was present in the courtroom. Instead, they called one of the investigating officers who had questioned her and, through him, sought to introduce her testimony as follows: "She said that she saw a gray pickup drive by, that she saw the passenger point the gun out the window and saw the gun fire. She further advised that she saw a young Indian male standing on the green portion of the lawn — of the Schafer lawn and that this man had a gun and this gun was pointed in the northwest and this man fired the gun. This young man then got over in front of the headlights of the vehicle, reloaded the gun in front

of the headlights. Shortly thereafter the police officers arrived at the scene and she did not see the man or the gun after that." Upon objection by the prosecution, the court refused to admit this testimony.

The defendant contends that the statement was admissible under the provisions of Neb. Rev. Stat. § 27-804(2)(e) (Reissue 1979) which would admit: "A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (i) the statement is offered as evidence of a material fact, (ii) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (iii) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant." An unavailable witness is defined by Neb. Rev. Stat. § 27-804 (Reissue 1979), in part, as follows: "(1) Unavailability as a witness includes situations in which the declarant: . . . (c) Testifies to lack of memory of the subject matter of his statement; or . . . (e) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means."

The ruling of the court in rejecting the offer was correct for several reasons. The proponent did not make known to the adverse party the proposal to use the hearsay testimony. The giving of such notice is one of the requirements necessary to make such evidence admissible. The prosecutor did know of Mrs. Schafer's statement and, because of her emotional condition, had agreed not to call her. He did not know, however, that

the defense proposed to use her out-of-court statement. The defendant argues that, under these circumstances, the giving of the notice was unnecessary. Two opinions of the Second Circuit U.S. Court of Appeals have held that the pretrial notice requirement is to be rigidly enforced. *United States v. Oates,* 560 F.2d 45 (2d Cir. 1977); *United States v. Ruffin,* 575 F.2d 346 (2d Cir. 1978). Some courts have held otherwise. *Furtado v. Bishop,* 604 F.2d 80 (1st Cir. 1979). We hold that the notice requirement is mandatory. For purposes of this opinion only, we assume that the stipulation determined the question of the witness' unavailability.

The court's ruling was not erroneous for other reasons. The husband, as well as another witness, testified to essentially the same facts as those contained in the statement. Furthermore, the State's own evidence indicated that someone in the crowd had a gun other than the shotgun that did the wounding. The State offered and there was received in evidence a .22-caliber rifle which was found hidden near the scene the morning following the shooting.

The defendant's final contention is that the court erred in admitting out-of-court statements made by the defendant. These were objected to on the ground they were hearsay and also because they were exculpatory in nature. The statements in question contain various admissions, namely, that the defendant was at the scene about the time of the incident, that he was a passenger in the pickup truck, that he had a shotgun in the pickup, that he loaded and fired it once, that his motivation for going to the area was to help his friends who were being harassed by Indians, and that he intensely disliked Indian people. Admissions by a party opponent are not hearsay and, if material, are competent evidence. Neb. Rev. Stat. § 27-801(4)(b) (Reissue 1979).

AFFIRMED.

KRIVOSHA, C.J., and BRODKEY, J., concur in result.

BOSLAUGH, J., dissenting in part.

I concur in the judgment of the court but do not join in that part of the opinion that suggests the circumstantial evidence rule applies only to "material facts" when used in the sense of ultimate facts. It should be self-evident that the rule is applicable to any fact or circumstance rel: ` upon to sustain a finding of guilty.

The rule that any fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the defendant is a correct statement of law and has reference to the inferences to be drawn from a fact or circumstance proved. If a proven fact goes no further than to give equal support to two inconsistent inferences, then an inference favorable to the party with the burden of proof can not be drawn from that fact or circumstance by the trier of fact.