STATE OF NEBRASKA, APPELLEE, V. ROY PEREZ, APPELLANT.

457 N.W.2d 448

Filed July 13, 1990.   No. 89-781.

Charles F. Fitzke, Scotts Bluff County Public Defender, and Robert L. Wolf for appellant.

Robert M. Spire, Attorney General, and Kenneth W. Payne for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Defendant, Roy Perez, appeals from jury convictions of two counts of delivering or distributing a controlled substance, cocaine, in violation of Neb. Rev. Stat. § 28-416 (Cum. Supp. 1988). He was sentenced to two terms of 3 to 6 years' imprisonment, to be served consecutively. Defendant alleges as error that the trial court erroneously refused to accept defendant's plea of guilty offered pursuant to a plea bargain, that the trial court erroneously refused to grant a continuance or postponement of his trial, that the trial court erred in allowing the trial to proceed when the jury did not appropriately reflect the inclusion of persons of Hispanic descent, that the trial court imposed an excessive sentence, that the trial court erred in refusing to sustain his motion for a directed verdict, and that the trial court erred in overruling defendant's motion for a new trial on the ground of newly discovered evidence because defendant was not permitted to allow the tape-recorded evidence of defendant's alleged admissions made during the drug sales to be examined by expert witnesses to determine whether such evidence had been altered or otherwise tampered with.

A two-count information was filed on December 1, 1988, charging defendant with violations of § 28-416, delivery or distribution of cocaine. On December 5, 1988, an arraignment was held, at which time defendant stood mute as to both of these charges, as well as to another charge of possession of cocaine. The court entered pleas of not guilty on behalf of the

defendant.

After a January 18, 1989, hearing, the trial court granted defendant's motion for a continuance and set a trial date of May 15, 1989.

The defendant was represented at all times by the public defender. A plea bargain was negotiated wherein the defendant would plead guilty to count I, in exchange for which the State would dismiss count II and the charge of possession of cocaine.

At a plea hearing on April 18, 1989, after the defendant tendered a plea of guilty, the court specifically and completely explained to the defendant all of his rights and the rights he would waive by pleading guilty.

When asked by the court whether he was satisfied with the manner in which his lawyer had negotiated the plea bargain, he answered, "No." The record shows that the defendant was dissatisfied because his counsel "was under a heavy load and he had no time to talk about the case or anything," and defendant also complained about the manner in which his attorney conducted a deposition of the principal witness against the defendant, i.e., he did not tell defendant he could have asked his lawyer to ask certain questions.

By his own admission the dissatisfaction with his lawyer constituted part of the reason for defendant's decision to plead guilty, and the evidence had nothing to do with that decision. On this basis the trial court refused to accept defendant's guilty plea, whereupon the State immediately withdrew the offered plea bargain.

On May 3, 1989, defendant filed a motion for continuance of the May 15 trial date for the reason that defendant had planned to plead guilty, but when the court refused to accept the plea it became too late for the defendant or his counsel to locate, contact, and subpoena witnesses. A hearing was held on that motion on May 8, 1989. The court inquired of the defendant and counsel as to the names and addresses of the witnesses they proposed to find and what would be the subject matter of their testimony. The defendant was extremely vague, stating that he did not know their last names, did not know the answers they would give to questions, and in some instances knew only their nicknames. As near as could be determined, the witnesses

would either testify as to defendant's good character or some of them allegedly would testify as to the character of the State's witness who made the buys from defendant, relating to his having worked for other state agencies setting up persons on "drug busts." The motion was denied on the theory that defendant had had almost 6 months to prepare for trial.

The principal witness against the defendant was one Charles Hieatt, a cooperating individual who made the two buys from the defendant, for which he was paid a fee by the police. The witness had been wired with a transmitter and microphone, which were used by the police to monitor the buys.

Three law enforcement officers testified as to their contacts with Hieatt, how he had been searched before being allowed to meet the defendant to make the buys, how he was kept under observation at all times, and how they immediately took the purchased drugs from him after the buys. They not only testified as to their observations of the defendant as he went to and from the place of the delivery, but also testified in part to the voices they heard from the transmitter on the witness. A chemist for the State Patrol testified that he identified the substances obtained during the buys as cocaine.

During the course of the trial it was brought out that Hieatt had been a drug user, had been arrested and convicted of felonies, and had worked for one or more other law enforcement agencies making buys. Defendant was also permitted to call several character witnesses in spite of the fact that he had neglected to list them as witnesses within the time provided by the trial court.

Defendant was convicted of both counts of distribution and was sentenced to consecutive terms of imprisonment of 3 to 6 years on each count.

On May 12, 1989, 3 days before trial, defendant filed a challenge to the jury array, alleging a systematic and unconstitutional exclusion of persons of Spanish or Mexican heritage from the panel. An evidentiary hearing was held on that motion the same day it was filed, and the motion was overruled.

We first discuss defendant's claimed error that the trial court refused to accept his guilty plea.

It is well established that a criminal defendant has no absolute right to have his or her plea of guilty or nolo contendere accepted even if the plea is voluntarily and intelligently made. *State v. Leisy*, 207 Neb. 118, 295 N.W.2d 715 (1980); *State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849 (1977), *overruled on other grounds, State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986); *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971).

The trial court is afforded discretion in deciding whether to accept guilty pleas, and the Supreme Court on appeal will reverse the trial court's determination only in case of an abuse of discretion. *State v. Leisy, supra*.

Defendant cites *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973), and *Griffin v. United States*, 405 F.2d 1378 (D.C. Cir. 1968), as imposing limits upon a trial court's discretion to reject a tendered plea of guilty.

*Ammidown* involved a situation where the trial court rejected a plea to a lesser offense for the reason that the public interest required the higher charge. That case related to a claimed trespass on judicial authority by the prosecutor's agreement. It did not involve a determination of the voluntary and intelligent nature of a tendered plea, and it is therefore readily distinguishable from the case at bar, which does involve such a question—a question reserved for the judiciary.

*Griffin* simply held that a guilty plea to a plea bargain arrangement should not be rejected without a good reason. Without our choosing to adopt this limitation, which appears to conflict with the "large measure of discretion" rule announced in *Leisy* and *Stewart*, it is sufficient to recognize that even if we were to adopt such a standard, we still could not find an abuse of discretion because the trial court had good reason to reject defendant's plea. Defendant's protestation of ineffective assistance of counsel, coupled with the admission that his dissatisfaction with his counsel played a part in his decision to accept the plea bargain arrangement, and his statement the evidence had nothing to do with his decision to plead guilty are more than sufficient to show there was good reason for rejecting defendant's plea.

Finally, in determining whether there was an abuse of

discretion, we must determine whether a defendant has suffered any prejudice as a result of the rejection of the plea. See, *Leisy, supra*; *People v Best*, 132 A.D.2d 773, 517 N.Y.S.2d 582 (1987).

Under the plea bargain arrangement, the defendant could have received a sentence of $16^2/3$ to 50 years' imprisonment. His sentences in this case were consecutive sentences of 3 to 6 years each. There is no merit to defendant's first assignment of error.

Regarding the denial of the motion for continuance, a continuance is a matter for the discretion of the trial court, whose ruling will be upheld absent an abuse of that discretion. See, Neb. Rev. Stat. § 25-1148 (Reissue 1989); *State v. Lewchuk*, 232 Neb. 229, 440 N.W.2d 229 (1989).

Defendant's motion for continuance was not supported by affidavit or any other evidence setting forth the facts upon which the continuance was requested, as required by § 25-1148.

In *State v. Carter*, 226 Neb. 636, 413 N.W.2d 901 (1987), no written application was made and no supporting affidavits were on file in support of a motion for continuance, both of which are required by § 25-1148. This court stated:

A failure to comply with § 25-1148 is relevant as to whether the trial court abused its discretion. In *Metschke v. Department of Motor Vehicles*, 186 Neb. 197, 200, 181 N.W.2d 843, 845 (1970), *overruled on other grounds Mackey v. Director of Department of Motor Vehicles*, 194 Neb. 707, 235 N.W.2d 394 (1975), this court stated: "In the absence of a showing in conformance with section 25-1148, R.R.S. 1943, it is not error for the trial court to refuse to grant a continuance." In that case we found no abuse of discretion in denying the appellant's oral motion for a continuance (to secure additional witnesses) because there was no showing made as to what evidence would be procured by calling additional witnesses, no showing of materiality, and no showing of any other matters pertinent in support of the motion.

226 Neb. at 641-42, 413 N.W.2d at 905.

Even were we to consider defendant's claims further, in *State v. Eichelberger*, 227 Neb. 545, 556, 418 N.W.2d 580, 588 (1988), we held that "where the criminal defendant's motion for

continuance is based upon the occurrence or nonoccurrence of events within the defendant's own control, denial of such motion is no abuse of discretion." That is clearly the case here. The request for continuance notes defendant himself placed reliance upon the court's accepting his plea of guilty and chose not to prepare for trial.

" 'There is no abuse of discretion by the court in denying a continuance unless it clearly appears that the defendant suffered prejudice as a result of that denial.' " *State v. Sluyter*, 224 Neb. 768, 771, 401 N.W.2d 480, 482 (1987); *State v. Fleming*, 223 Neb. 169, 388 N.W.2d 497 (1986). Defendant failed to make a sufficient showing that even if a continuance were granted for an indefinite period, he would be able to secure any material and noncumulative evidence. As a matter of fact, the content of the evidence he claimed these unnamed witnesses would furnish was that Hieatt had a criminal record and had been involved with other law enforcement agencies in "setting up people" on drug buys, which evidence was freely given by the State. Defendant has suffered no prejudice.

Defendant's challenge to the jury array grounded on the alleged systematic and unconstitutional exclusion of persons of Spanish descent was based on two affidavits submitted to the trial court.

One affidavit recited in relevant part as follows:

Affiant states that there is in her possession as such Economic Development Coordinator of Panhandle Area Development Commission the official, printed report on the 1980 Census conducted in the United States of America; that such report is named 1980 Census of Population By The United States Department of Commerce, Bureau of the Census, and this official report shows that the then reported total population of Scotts Bluff County, Nebraska, was 38,344; and that in said county, included within such total population count were 4714 persons of Spanish descent.

This was the only evidence of the percentage of persons of Spanish descent in the population of the county as a whole.

The second affidavit is that of Santos Castro, the deputy of the acting clerk of the district court for Scotts Bluff County,

Nebraska, which acting clerk is also the acting jury commissioner for said county. Included in that affidavit is a description of the process in which the venire is composed. Lists of the registered voters and registered drivers in Scotts Bluff County are used. A computer merges the two lists, alphabetizes the names, and eliminates obvious duplicates. From this merged list, names are selected for the venire in a key number fashion. There were 125 names so selected. Added to this 125 were 23 names of persons transferred from an earlier venire selection. After taking into account disqualifications, inability to locate persons, excuses, and transfers of persons to serve on a later jury term, defendant's venire was formed. Copies of the original listing of 125 names, the 23 names of persons transferred to the venire for defendant's jury term, and the final or revised listing of the names of persons on defendant's venire were attached to the affidavit.

At the hearing on his challenge, defendant's attorney argued that based upon the affidavit relating to census figures, the total percentage of persons of Spanish descent in the population of Scotts Bluff County as a whole was 12.29 percent. He then argued that out of the original list of 125 names, only 2 of what he considers to be "reasonably obvious Spanish surnames" were ultimately included on the venire of 88 names, or 2.27 percent.

At a later point, he argued that the list of 23 names transferred to defendant's venire (those 23 are included in the 88 names just mentioned) from an earlier jury term contained what he deemed were only "names of Anglos." He then claimed this addition decreased the percentage of what he deemed to be Spanish surnames on defendant's venire, and further that the allowance of the transfer was "systematic" and "therefore bastardize[d] the process."

Defendant's counsel next drew the trial court's attention to the original list of 125 names. On that list there are 60 names that are crossed out and accompanied by a notation as to why they are eliminated, e.g., nonresident, no address, transferred, etc. Counsel contended nine of what he again believed to be reasonably obvious Spanish surnames were crossed out. He then stated: "[The] Jury Commissioner never makes any effort

to fill those vacancies out of names of people in this identifiable segment of the community. That is where the systematic exclusion comes into play. And really, Your Honor, that's what I'm arguing."

On appeal, defendant's argument changes its focus. He now presents in the nature of disproportionate impact theory the argument that he established a prima facie case of discrimination and points only to the statistical disparity between the alleged census results of the population as a whole and his calculations of the percentage of what he deems to be Spanish surnames on the venire.

Defendant provides no indication of whether his challenge of the composition of his venire is grounded upon the fair cross-section requirement of the 6th amendment or the equal protection clause of the 14th amendment, or both. We will address the protection afforded by each.

The U.S. Supreme Court, in *Duren v. Missouri*, 439 U.S. 357, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979), set forth what a defendant must prove in order to show a prima facie violation of his sixth amendment right to a jury pool representing a fair cross-section of the community.

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. at 364.

In a case involving a challenge under the equal protection clause to a venire containing no Mexican-Americans, *U.S. v. Garcia*, 836 F.2d 385, 388 (8th Cir. 1987), the court stated:

> In *Batson v. Kentucky*, 476 U.S. 79, 93-96, 106 S.Ct. 1712, 1721-22, 90 L.Ed.2d 69 (1986), the Supreme Court recently reviewed the criteria for establishing a prima facie case of denial of equal protection in venire selection. The court reiterated that the burden is on a defendant alleging

discriminatory venire selection " 'to prove the existence of purposeful discrimination.' " *Id*. 106 S.Ct. at 1721 (quoting *Whitus v. Georgia*, 385 U.S. 545, 550, 87 S.Ct. 643, 646, 17 L.Ed.2d 599 (1967)). A defendant may seek to prove purposeful discrimination, as in this case by "proof of disproportionate impact." *Batson*, 476 U.S. at 93, 106 S.Ct. at 1721. Disproportionate impact may be demonstrated either by showing that the defendant's cognizable racial group has not been summoned for jury service over an extended period of time; or that his group is substantially underrepresented on his venire and that the venire was chosen under a practice providing the opportunity for discrimination. *Batson*, 476 U.S. at 95, 106 S.Ct. at 1722.

There was no evidence presented as to the makeup of prior venires, and thus we concern ourselves only with the latter requirement concerning both substantial underrepresentation and opportunity for discrimination.

There is no evidence in the record to suggest that defendant's data distort the degree of underrepresentation of persons of Spanish descent on the venire. The State presented no evidence at the hearing and made no objection to the receipt of defendant's affidavits into evidence. Rather, the State contended that defendant failed to demonstrate the requisite systematic exclusion or purposeful discrimination. We will limit our analysis accordingly.

Under the fair cross-section requirement, the third prong of the *Duren* prima facie case requirements must be met in addition to showing underrepresentation. That prong requires defendant to show that the underrepresentation of persons of Hispanic descent was systematic—that is, inherent in the particular jury selection process utilized. See *Duren, supra.*

In order to show the requisite purposeful discrimination under the equal protection clause, as required by *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), defendant must have shown in addition to substantial underrepresentation that the venire was chosen under a practice providing the opportunity to discriminate.

On appeal, defendant merely argues that an

underrepresentation exists. He completely fails to address the issues of systematic exclusion and purposeful discrimination. On this basis his argument on appeal must be rejected.

Although the argument is apparently abandoned for the purposes of this appeal, at the hearing defendant presented the argument that systematic exclusion "comes into play" because the jury commissioner fails to replace the names of Spanish-surnamed persons who are excused, disqualified, or transferred with the names of other Spanish-surnamed people. This argument is untenable, as it requires the substitution of a process mandating discrimination for the random and neutral procedure of jury selection currently used. There was no sufficient showing of systematic exclusion; consequently, defendant has failed to make out a prima facie case under the fair cross-section requirement.

Defendant has not even attempted to present evidence or argument as to whether the venire was chosen under a practice providing the opportunity to discriminate. Therefore, defendant has also failed to prove a prima facie case of discrimination under the equal protection clause.

The challenge to the jury array is without merit.

Defendant's sentences were not excessive. It is a fair conclusion from the evidence in this case that defendant has been heavily involved in the drug trade. A sentence imposed within statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Eary, ante* p. 254, 454 N.W.2d 685 (1990); *State v. Zaritz, ante* p. 599, 456 N.W.2d 479 (1990).

Defendant's criminal record shows a longstanding disregard for the rule of law. Included among the many offenses he has committed are eight offenses involving substance abuse. The crimes of which he was convicted are of a serious nature.

Defendant's motion for a directed verdict should not have been sustained. In a criminal case a court can direct a verdict only where there is a complete failure of evidence to establish an essential element of the crime charged, or evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Eary, supra; State v. Brown, ante* p. 374, 455 N.W.2d 547 (1990).

The record fully supports the convictions, and this assignment of error is wholly frivolous.

In defendant's sixth assignment of error, defendant argues that his motion for new trial, based on newly discovered evidence, should have been granted.

A motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, its determination will not be disturbed. *State v. Costanzo, ante* p. 126, 454 N.W.2d 283 (1990).

A defendant who has filed a motion for new trial on the ground of newly discovered evidence has the burden to show that the alleged newly discovered evidence is of such a substantial nature that if it had been received in the original trial, it would have changed the result. *Id.*

Generally, "newly discovered evidence" is evidence material to the defense that could not with reasonable diligence have been discovered and produced at trial. *Id.*

The tape that defendant listened to after trial and that he claims spurred his sudden recall of the events relating to count I (which completely contradicts his testimony at trial) was in his possession far in advance of trial. Defendant failed to act with reasonable diligence by neglecting to review the tape and refresh his memory until after trial. The trial court held that defendant did not establish the discovery of new evidence and overruled the motion for new trial. It did not abuse its discretion in doing so.

As we have already determined that the tape-recorded testimony of the controlled buy does not constitute newly discovered evidence, it is unnecessary for us to now address whether that tape should have been listened to by an expert after trial upon defendant's factually unsupported and equivocal request to the trial court.

The judgment of the district court is affirmed.

AFFIRMED.