STATE OF NEBRASKA, APPELLEE, V.
COLIN E. BROWN, APPELLANT.

689 N.W.2d 347

Filed December 10, 2004.   No. S-04-176.

Ann C. Addison-Wageman, of Wageman & Whitworth, for appellant.

Jon Bruning, Attorney General, Kimberly A. Klein, and Dan Money, Senior Certified Law Student, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Colin E. Brown appeals from his convictions on one count of conspiracy to manufacture a controlled substance, a Class III felony for which he was sentenced to a term of incarceration of 30 months to 4 years, and one count of possession of methamphetamine, a Class IV felony, for which he was sentenced to a concurrent term of incarceration of 12 to 18 months.

## BACKGROUND

An information charging Brown with the two offenses was filed on August 9, 2001. At his arraignment on August 17, Brown entered pleas of not guilty on both charges. At arraignment, Brown and his counsel were given a case progression order. The order provided that the case would be set for trial at a docket call to be held on October 16, that "all pretrial issues" would be addressed at an "omnibus hearing" scheduled for October 3, and that, except for good cause shown, pretrial motions were required to be filed on or before September 25. It further provided that "if

there are no pretrial motions and upon agreement of counsel, a plea agreement may be heard in lieu of pretrial matters." The journal entry noted "[a]ll plea negotiations shall cease at time of docket call."

Brown failed to appear for the omnibus hearing on October 3, 2001. His counsel informed the court that Brown was incarcerated in Oregon and requested a continuance. The State's motion for a capias and bond forfeiture was continued until docket call on October 16. Brown did not appear at the October 16 docket call, and the court denied his counsel's request for a continuance. The court also granted the State's motion for capias and bond forfeiture. The capias was issued October 26. The State's motion of default on recognizance was granted on November 9. No further proceedings were held until after Brown was arrested on the capias and appeared before the court on September 26, 2003. On that date, the matter was set for docket call on November 4 and bond was set at $20,000.

On October 17, 2003, Brown appeared in court and attempted to enter a plea pursuant to an agreement with the Sarpy County Attorney. After reviewing the history of the case, the judge stated: "I am not sure we can dismiss anything. . . . [W]e passed the time [for] plea agreements." During the ensuing discussion with counsel, conflicting information was presented regarding Brown's previous failures to appear. Defense counsel again stated that Brown had been incarcerated in Oregon. The prosecutor stated that Brown was originally thought to be in Virginia but that he was eventually arrested in North Carolina. At that point, the judge stated: "Leave it on for docket call. It's passed." On November 4, Brown appeared with counsel and waived his right to trial by jury. The court scheduled a bench trial and continued Brown's bond.

Immediately prior to the commencement of trial on November 20, 2003, Brown's counsel stated:

> Judge, I would like to make a motion if I could. The defendant is charged with a Class III Felony and Class IV Felony. The State has offered to let him plead to a Class IV Felony. We are willing to do so.
>
> I think we addressed this matter about three weeks ago, and you said continue it for docket call and we set it for trial

today. So I would like to renew my motion to allow him to plead to a Class IV Felony.

I think it shows he didn't show up for a docket call about two years ago.

The prosecutor did not respond. The court again reviewed the history of the case, noting Brown's failure to appear at the omnibus hearing and docket call in October 2001. The court then stated:

I don't have any control over the State dismissing charges but I've got control over plea agreements. And I have said it before and I will say it again. I am just not going to stand, you know, for plea agreements past a point of time that the defendant and counsel are given an opportunity, you know, to resolve the matter.

So I guess the answer, then, is that the State saw fit to file two charges. We have gone through the procedures on them. We go to trial on two charges.

Defense counsel interposed an objection to the proceedings going forward on the ground that Brown would be denied "his right of due process and a fair trial," and the court noted the objection for the record.

The bench trial then began. The prosecution called four witnesses, none of whom were cross-examined by defense counsel. Several exhibits were received without objection, and one exhibit was received over a relevance objection by defense counsel. Defense counsel did not present any evidence. The court found Brown guilty on both counts. After sentencing, Brown perfected this timely appeal which we moved to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Brown assigns, restated, (1) that the district court erred in refusing to accept his guilty plea to the single charge of possession of methamphetamine pursuant to the plea agreement and (2) that he received ineffective assistance of counsel at trial.

## STANDARD OF REVIEW

A trial court is given discretion as to whether to accept a guilty plea; this court will overturn that decision only where

there is an abuse of discretion. *State v. Johnson*, 242 Neb. 924, 497 N.W.2d 28 (1993); *State v. Perez*, 235 Neb. 796, 457 N.W.2d 448 (1990).

■ Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. *State v. Hubbard*, 267 Neb. 316, 673 N.W.2d 567 (2004); *State v. Sims*, 258 Neb. 357, 603 N.W.2d 431 (1999).

## ANALYSIS

### REFUSAL TO ACCEPT PLEA

■ It is well established that a criminal defendant has no absolute right to have his or her plea of guilty or nolo contendere accepted even if the plea is voluntarily and intelligently made. *State v. Johnson, supra; State v. Perez, supra.* Our cases recognize that a trial court has a large measure of discretion in deciding whether to accept a guilty plea. *State v. Leisy*, 207 Neb. 118, 295 N.W.2d 715 (1980); *State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849 (1977), *disapproved on other grounds, State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986).

Although we wrote in *State v. Stewart*, 197 Neb. at 511, 250 N.W.2d at 859, that "such discretion is not unlimited," we have declined to adopt specific limitations imposed by other jurisdictions. For example, in *State v. Perez, supra*, we discussed *Griffin v. United States*, 405 F.2d 1378 (D.C. Cir. 1968), which held that a guilty plea as part of a plea agreement should not be rejected without a good reason. We declined to adopt this rule, noting that it "appear[ed] to conflict with the 'large measure of discretion' rule announced in *Leisy* and *Stewart*." *State v. Perez*, 235 Neb. at 801, 457 N.W.2d at 453. Similarly, although in *State v. Stewart, supra*, we acknowledged cases such as *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973), in which courts have attempted to define the scope of a judge's discretion to reject a guilty plea, we nevertheless specifically declined to do so.

Our previous cases have focused upon whether a trial court erred in rejecting a plea agreement for substantive reasons, such

as an inadequate factual basis or the defendant's dissatisfaction with his counsel. See, *State v. Johnson, supra*; *State v. Perez, supra*. On the other hand, this case presents the question of whether a trial court abuses its discretion by rejecting a plea agreement because it was submitted after the expiration of a judicially imposed deadline. Other courts addressing this issue have reached differing conclusions.

In jurisdictions which recognize a trial court's wide discretion to accept or reject plea agreements, strict enforcement of plea deadlines has generally been upheld. See, *U.S. v. Gamboa*, 166 F.3d 1327 (11th Cir. 1999) (rejecting guilty pleas of all coconspirators because one missed deadline by 40 minutes); *United States v. Ellis*, 547 F.2d 863 (5th Cir. 1977) (rejecting plea 1 day after deadline); *People v Grove*, 455 Mich. 439, 464, 566 N.W.2d 547, 558 (1997) ("rejection of a tardy plea is within the discretion of a trial court," where plea was presented 1 day before trial and over 1 month after plea cutoff date); *People v. Cobb*, 139 Cal. App. 3d 578, 188 Cal. Rptr. 712 (1983) (affirming rejection of plea submitted after deadline imposed by local practice rule). Courts taking this approach generally cite the need for enforceable efficiency in the trial court's management of its docket. See, *U.S. v. Gamboa, supra* (court-imposed time limits supported by need for judicial discretion in controlling scheduling of trial procedures and docket control and effective utilization of jurors and witnesses); *United States v. Ellis, supra* (strict adherence to guilty plea deadlines is justified as means of giving deadline integrity). The California Court of Appeals noted in *Cobb* that plea bargains are subject to reasonable time constraints and that court-imposed deadlines provide "a means of reducing the confusion, hardship and inconvenience inherent in calling calendars." 139 Cal. App. 3d at 581, 188 Cal. Rptr. at 713.

Other courts have determined that the rejection of a plea agreement solely because it was submitted after a deadline had passed constitutes an abuse of discretion. *U.S. v. Shepherd*, 102 F.3d 558 (D.C. Cir. 1996) (rejection of untimely plea agreement was abuse of discretion where record reflected plausible explanation for delay); *State v. Darelli*, 205 Ariz. 458, 72 P.3d 1277 (Ariz. App. 2003) (holding plea cutoff dates are impermissible without rule promulgated by Arizona Supreme Court); *State v. Hager*, 630

N.W.2d 828, 836 (Iowa 2001) (finding abuse of discretion where "court strictly adhered to the deadline and refused to consider the individual pressures and indecision faced by [the defendant]"); *State v. Sears*, 208 W. Va. 700, 705, 542 S.E.2d 863, 868 (2000) (abuse of discretion for trial court "to summarily refuse to consider the substantive terms of the [plea] agreement solely because of the timing of the presentation"). Courts rejecting the strict enforcement of court-imposed deadlines reason that the administrative benefits of efficiency must be balanced against fundamental principles that are impacted by the deadlines. For example, *State v. Hager*, 630 N.W.2d at 834, stated that "the pivotal dispute among the various courts centers on the balancing of the myriad of competing interests." The court noted that "[p]lea deadlines not only adversely impact prosecutorial discretion and individual interests, but strict adherence to deadlines impedes the very discretion of the court." *Id.* at 835-36. See, also, *U.S. v. Robertson*, 45 F.3d 1423 (10th Cir. 1995); *State v. Sears, supra.*

Trial courts faced with the pressure of congested dockets and speedy trial requirements must have a degree of discretion in managing criminal case progression. The imposition of deadlines for completion of various pretrial procedures is a common case management tool, and thus the establishment and enforcement of deadlines for submission of plea agreements does not in itself constitute an abuse of judicial discretion. However, in view of the fact that "'plea bargaining' is an essential component of the administration of justice," *Santobello v. New York*, 404 U.S. 257, 260, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), there may be circumstances in which strict enforcement of plea deadlines could constitute an abuse of discretion. In *People v. Jasper*, 17 P.3d 807 (Colo. 2001), the Supreme Court of Colorado fashioned a rule for the enforcement of plea agreement submission deadlines. The court held:

> [A] trial court may impose and enforce a plea cutoff deadline as part of its case management authority. In order to prevent arbitrary rejection of untimely pleas, however, a trial court must provide adequate notice to the parties of the plea cutoff deadline and must permit an exception to the deadline for good cause. The parties, not the court, bear the burden of establishing an exception to the plea cutoff deadline. Unless

the parties specifically inform the court of facts constituting good cause, the parties waive any objection to the court's enforcement of the deadline.

17 P.3d at 809-10. We conclude that this rule serves the interest of efficient judicial administration in a manner which is consistent with due process of law, and we therefore adopt it. We expressly note, however, that adoption of this rule regarding plea agreement submission deadlines has no effect on our prior jurisprudence granting trial courts wide discretion in rejecting plea agreements for substantive reasons. See, *State v. Perez,* 235 Neb. 796, 457 N.W.2d 448 (1990); *State v. Stewart,* 197 Neb. 497, 250 N.W.2d 849 (1977), *disapproved on other grounds, State v. Palmer,* 224 Neb. 282, 399 N.W.2d 706 (1986).

In applying our new rule to the instant case, we examine the record to determine (1) whether Brown had notice of the district court's policy of not accepting plea agreements after the date of the docket call and (2) whether there exists good cause that would justify an exception to the strict enforcement of the policy. The progression order entered and provided to Brown on the date of his arraignment established a filing deadline and hearing date for all pretrial motions, and it specifically stated that plea agreements would be taken up at the hearing in lieu of pretrial matters. The journal entry from the date of arraignment specifically notes that all plea negotiations were to cease at the time of the docket call. In urging the district court to accept a plea agreement more than 2 years after the scheduled hearing, Brown's counsel did not argue lack of notice. Rather, Brown acknowledges in his appellate brief that his counsel was familiar with the court's rule and that he had discussed the matter with Brown. We conclude that Brown had notice of the court's deadline for considering plea agreements.

The record further reflects that no good cause existed for the belated submission of the plea agreement. Brown failed to appear at the omnibus hearing on October 3, 2001, reportedly because he was incarcerated in another state. He did not appear again in this case until September 26, 2003, after he had been arrested in another state and extradited to Nebraska. The district court recited these facts as a part of its ruling rejecting the proposed plea agreements. Defense counsel candidly admitted the obvious fact that

Brown was at fault for not appearing at the originally scheduled omnibus hearing and docket call.

Although under our new rule, a missed plea deadline alone does not support the rejection of a plea agreement, it is within a court's discretion to reject an untimely plea agreement "if the defendant ignores the deadline by making no reasonable effort to reach a plea agreement prior to the deadline." *State v. Hager*, 630 N.W.2d 828, 837 (Iowa 2001). See, also, *People v. Jasper*, 17 P.3d 807, 816 (Colo. 2001) (determining that "mere renegotiation or a change of mind by the parties" would not ordinarily establish good cause for tardy plea). Because Brown absented himself from the state for approximately 2 years during the pendency of his case in the district court, he cannot establish good cause for his failure to submit a proposed plea agreement within the time period designated at the time of arraignment. Accordingly, we conclude that the district court did not abuse its discretion in rejecting the plea agreement which Brown proposed upon his return in 2003.

### ASSISTANCE OF COUNSEL

Brown's second assignment of error is that he received ineffective assistance of counsel at trial when his attorney failed to subject the State's case to meaningful adversarial testing. A claim of ineffective assistance of counsel need not necessarily be dismissed merely because it is made on direct appeal; the determining factor is whether the record is sufficient to adequately review the question. *State v. McLemore*, 261 Neb. 452, 623 N.W.2d 315 (2001).

To establish a right to relief because of a claim of ineffective counsel at trial or on direct appeal, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *State v. Hubbard*, 267 Neb. 316, 673 N.W.2d 567 (2004); *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003). When considering whether a counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Faust, supra*; *State v. Zarate*, 264 Neb. 690, 651 N.W.2d 215 (2002). An appellate court will not

second-guess reasonable strategic decisions by counsel. *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000); *State v. Russell*, 248 Neb. 723, 539 N.W.2d 8 (1995). The presumption can be rebutted without an evidentiary hearing only when a decision by counsel cannot be justified as a result of a plausible trial strategy. *State v. Faust, supra.*

Brown argues that his trial counsel failed to cross-examine the State's witnesses or object to unspecified evidence adduced by the State. He also argues that the trial court failed to rule on his motion to suppress and that trial counsel made no objection, thus failing to preserve his right "to contest the search and seizure and any statements made pursuant thereto." Brief for appellant at 29-30. The record on direct appeal affords an insufficient basis upon which to evaluate these claims, and accordingly, we do not reach them.

## CONCLUSION

We conclude that the district court did not abuse its discretion in rejecting Brown's plea bargain proposed approximately 2 years after the deadline established by the court. We do not reach Brown's claims that his trial counsel provided ineffective assistance because the record on direct appeal is insufficient for adequate review of these claims. Accordingly, we affirm the judgment of the district court.

AFFIRMED.