STATE OF NEBRASKA, APPELLEE, V. FRANKLIN C.
BEACH, APPELLANT.

319 N.W.2d 754

Filed May 21, 1982. No. 81-640.

Jerry N. Stehlik and Jacobsen, Orr & Nelson, for appellant.

Paul L. Douglas, Attorney General, and Dale D. Brodkey, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

On March 20, 1981, the defendant, Franklin C. Beach, as a result of a plea agreement whereby the county attorney agreed not to make any recommendation as to sentencing, entered a plea of guilty to an August 24, 1980, attempted first degree sexual assault of a girl who was less than 16 years old. Following a presentence investigation, an examination by both a psychiatrist and a psychologist, and a sentencing hearing at which the defendant testified at some length, the District Court determined that the defendant was not a mentally disordered sex offender, but ordered him committed to the Department of Correctional Services for a 90-day evaluation under the provisions of Neb. Rev. Stat. § 83-1,105(3) (Reissue 1976). On July 1, 1981, the defendant filed a motion to set aside his plea, which was heard on August 21, 1981, and dismissed. The defendant was then sentenced on September 4, 1981, to a term of probation for 3 years. He has now appealed to this court. His principal assignment of error is that the court denied his motion to set aside his guilty plea which he claimed was made involuntarily and unintelligently.

The defendant is a 35-year-old man who claims to be totally disabled. Although he stated he had an 11th grade education, he also stated that he had been tested by the State and was found to have a functional reading ability equivalent to a third grade education. A test administered by a mental health center revealed a full scale I.Q. score of 105. He is married and has two children, ages 9 and 10. On or about the 24th day of August 1980, while employed as a part-time jailer at the Dawson County jail, the defendant allegedly attempted a first degree sexual assault of a girl less than 16 years of age.

Prior to the defendant's arraignment and plea of guilty, there had been a preliminary hearing, a hearing on a plea in abatement, and a suppression

hearing. As might be expected, the statement which the victim gave to the investigating officers and that related by the defendant to the same two officers were not in complete agreement. The victim insisted that the defendant let her out of her cell, started to kiss her against her will, forcibly brought her down to the floor, removed her clothing, and attempted to rape her. The defendant's version, as contained in a statement given to a deputy sheriff, was that they started kissing, went down on the floor, and the next thing "they were doing it." He could not remember if he took off her clothes or if she did.

Following the overruling of the plea in abatement and the motion to suppress, the case was set for trial. Before trial, the defendant appeared with his lawyer and changed his plea from not guilty to guilty. Except for the areas concerning the extent to which the defendant understood the charge against him and the voluntariness of the plea, the arraignment generally satisfied all requirements of due process.

The trial court commenced the explanation of the elements of the crime charged by a verbatim and consecutive reading of Neb. Rev. Stat. § 28-201 (Reissue 1979), the attempted crime statute, Neb. Rev. Stat. § 28-319 (Reissue 1979), the sexual assault statute, and the provisions of Neb. Rev. Stat. § 28-105 (Reissue 1979) regarding the penalty for a Class III felony, followed by the statement, "Do you understand what I've read to you?" To this, the defendant answered, "Yes, Your Honor." By way of further explanation, the court stated to the defendant that, to be guilty of sexual assault in the first degree, "It would have to first be shown that you did subject another person to sexual penetration; and, secondly, that you did one of these things, and in this case that you were more than 19 years of age and that the victim was less than 16 years of age. Now, that's the

elements of sexual assault. And then in order to apply the section with regard to attempt they have to prove elements that are different, and it would have to be shown that you did intentionally engage in conduct which under the circumstances as you believed them to be constituted a substantial step in a course of conduct intended to culminate in your commission of the crime. So that in discussing these elements I believe that it would not be necessary for you to achieve sexual penetration, for instance, in order to be guilty of an attempt; but it would have to be that you engaged in conduct which under the circumstances as you believed them to be constituted a substantial step in a course of conduct intended to culminate in that. So that it would have to be shown or have to be proved that you were attempting to commit a first-degree sexual assault. . . . Do you understand that?'' To which the defendant replied, ''Yes.'' Immediately following the foregoing explanation, the court was advised by the defendant, in response to questions from the bench, that he had had an opportunity to discuss the nature of the crime at length with his attorney. We do not believe we can say as a matter of law that the trial court was wrong in making the determination that the plea was made with an understanding on the part of the defendant as to the nature of the crime charged.

Regarding the factual basis or justification for entry of the plea, this is, we believe, another matter. The court informed the defendant that although it had heard evidence in the case preliminary to that hearing, ''there has been evidence on both sides of the thing, so that I would like to hear from you what you consider the facts to be that make you willing to plead guilty to this charge?'' The defendant answered: ''I'm guilty of some of it, Your Honor, but I ain't guilty of all of it. I didn't take a girl out to do this. I helped a lot of people up there, and I was trying to help her. And she did use me, but I didn't,

and, like I told, I thought about it, yes, but I didn't."
When pressed as to what actually happened, the defendant replied: "A. Well, we were talking and I went to the bathroom. I heard something and I come out and there she was. Q. What do you mean 'there she was'? Where was she? A. She was standing right around the corner. Q. All right. A. I heard the doors open, so I assumed they took the keys. I come around the corner and there she was. Q. And then what happened? A. And we went down, and she kissed me and we went down, and I thought about it but I didn't. Q. You said she kissed you and you went down. Where did you go down? A. On the floor. Q. With Debbie? A. Yes. She was on top of me and then I rolled over and I got up and I said, 'No' and put her back in her cell. Q. Was there some state of unclothed condition with regard to one or both of you? A. Yes. Q. Would you describe that? A. Yes. She had, I couldn't, couldn't tell you for sure, she had all of them off or one leg or part way off. Q. Most of her clothes were off? A. Yes. Q. What was the condition of your clothes? A. My clothes were on. I had just come from the bathroom. I didn't have the pants zipped, I didn't get them zipped, but I didn't have them down."

A discussion then occurred between the judge, on the one hand, and the defendant and his attorney regarding the age of the victim and the defendant's knowledge of that fact. The defendant then explained to the court that the victim had been in jail about three nights, and he talked to her and she was crying each time. The court then inquired: "Q. How did she get into this unclothed state? Did you take her clothes off, or did she take her clothes off, or what happened? A. I don't know; didn't see; but she didn't have her clothes on when I come around the corner. Q. When you came around the corner from the bathroom, why, she was at that

time essentially naked? A. Right. And then after that she wanted me to let her and Rocky, that's her boy friend, out because they were going to get married and she didn't think that it was right that he be in there. And I said that I couldn't let anybody out."

The justification for the plea, beyond the factual basis, would have had to have been found in the following colloquy between the court and the defendant: "In entering this plea you have been guided partly by the plea concession or the plea bargain that the county attorney has entered, that he would not make a recommendation as to your punishment, is that right? A. Yes. Q. And you have considered the difficulties of presentation of the case in trial? A. Yes, Your Honor. Q. And in that respect, why, you have discussed it fully with your attorney? A. Right. But, I want to get my physical problem, this is just making a bigger burden on me, --- Q. You do have a physical problem of pain in your leg? A. Yes, Your Honor. THE COURT: All right. Very well. I will accept your plea and find you guilty of attempted first-degree sexual assault . . . ."

A good deal of defendant's testimony at the hearing on his motion to withdraw his plea is not particularly convincing. He claims that one of the deputy county sheriffs harassed his wife. However, when pressed to elaborate, the only thing which he could point to was that the deputy said "cute things and funny things to her that upset her." He claims that he was intimidated by the county attorney, who threatened to get some of the former jail inmates in trouble, whom Beach had helped. He insisted that on several occasions he and his family had seen members of the sheriff's department driving past their place and turning around in their driveway. He also alleged that the sheriff's office tried to have a "sheriff's sale" on his house. However, it developed that this apparently related to the involvement

of the sheriff as an officer of the court. Finally, Beach stated that he thought the crime to which he pleaded guilty related to "thinking of having sex with a girl." He based this on a conversation he claimed to have had with a deputy who told him that "if you thought it you did do it." He went on to testify that it was not until he was confined at the Regional Center for an evaluation that the crime of attempted sexual assault was explained to him, and that he concluded what he had done was not a violation of the law.

We agree that in this case there was sufficient information available to the trial court to afford a factual basis for a finding of guilt. In *State v. Leisy,* 207 Neb. 118, 295 N.W.2d 715 (1980), citing *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), we held that a plea of guilty, voluntarily and intelligently made, might be accepted even though the defendant professes his innocence, provided there is a factual basis for a finding of guilty. Actually, *Alford* imposes one additional requirement, and that is that the judge in accepting the plea must have inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence. "Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt. . . . Because of the overwhelming evidence against him, a trial was precisely what neither Alford nor his attorney desired. Confronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30-year term." *Id.* at 37.

When questioned by the trial court at his arraignment, the defendant refused to admit, even denied, the facts which would have justified a finding of guilt. The agreement of the county attorney not to make a recommendation as to punishment, which supposedly influenced the defendant to enter a plea of guilty, would hardly seem to be a sufficient concession on the part of the prosecution to justify such action by a man who professed his innocence. We do not believe that the inquiry made by the trial court was sufficient to resolve the apparent conflict between "the waiver of trial and the claim of innocence."

The District Court should have granted defendant's motion to withdraw his plea of guilty. The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.