STATE OF NEBRASKA, APPELLEE, V.
JAMES D. CURTRIGHT, APPELLANT.
637 N.W.2d 599

Filed January 4, 2002.   No. S-01-521.

Peter K. Blakeslee for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

James D. Curtright appeals the order of the district court for Lancaster County denying his motion for postconviction relief. After an evidentiary hearing, the district court concluded that trial counsel was not ineffective when he did not file a direct appeal because Curtright had instructed trial counsel not to file such appeal. The district court further determined that the remaining issues raised by Curtright in the postconviction motion were waived because they could have been raised on a direct appeal. We affirm the denial of Curtright's motion for postconviction relief.

## STATEMENT OF FACTS

Following a jury trial, Curtright was convicted on May 7, 1986, of two counts of murder in the first degree and two counts of use of a weapon to commit a felony. The victims were Curtright's mother and sister. On July 3, Curtright was sentenced to life imprisonment on each murder conviction and 10 years' imprisonment on each weapon conviction. At trial, Curtright was represented by two deputy public defenders, one of whom served as lead trial counsel (trial counsel). No direct appeal was taken from Curtright's convictions and sentences.

On April 9, 1999, Curtright filed a pro se motion for postconviction relief. In the motion, Curtright asserted five claims for which he sought postconviction relief. Curtright asserted that (1) he was provided ineffective assistance of counsel because no direct appeal was filed on his behalf despite several appealable issues which arose at trial, (2) he was provided ineffective assistance of counsel at trial because he is deaf and no interpreter was present during some of his pretrial meetings with counsel, (3) he was provided ineffective assistance of counsel at trial because he was not provided a competent interpreter during trial, (4) certain self-incriminating statements were admitted

into evidence against Curtright in violation of his *Miranda* rights, and (5) testimony of a psychologist who was not licensed to practice in Nebraska was admitted into evidence against Curtright in violation of his right to due process of law and a fair trial. For relief, Curtright sought, inter alia, that his convictions and sentences be set aside and vacated, that he be appointed counsel, and that he be provided such other and further relief as the district court deemed just.

Postconviction counsel was appointed for Curtright, and on July 20, 2000, Curtright filed a motion requesting that the district court direct the preparation of a bill of exceptions of the trial and sentencing proceedings. On July 31, the district court denied the motion, stating that

> [t]he errors alleged by the defendant with respect to pretrial and trial matters are waived if they could have been raised on direct appeal and, therefore, the record is of no assistance unless it is found that the defendant was denied effective assistance of counsel with respect to the decision not to appeal.

The district court stated that the pretrial and trial issues were not relevant "[u]ntil the defendant shows that the failure to appeal was due to ineffective assistance of counsel . . . ."

An evidentiary hearing was held March 21 and April 11, 2001. At the hearing, Curtright waived the attorney-client privilege and trial counsel testified regarding communications he had had with Curtright. Trial counsel testified that during the pretrial stages and trial, he communicated with Curtright through a sign language interpreter as well as through the use of a telecommunications device for the deaf (TDD) designed to assist deaf persons to communicate by telephone, which allowed Curtright to type words and have his words displayed on a screen. Trial counsel also stated that he attempted to learn some sign language, but generally used an interpreter, the TDD, or note writing to discuss trial strategy with Curtright. Trial counsel noted that Curtright knew American Sign Language (ASL) and explained that because ASL was a different language from English, when Curtright wrote or used the TDD to communicate in English, his sentence structure would not always follow standard English form and might appear ungrammatical. Trial coun-

sel testified, however, that he found Curtright to be intelligent and able to understand abstract concepts very well.

Certain of Curtright's writings quoted below were received in evidence at the postconviction hearing. We note that because of Curtright's translation of ASL into English, certain of his writings which are quoted below appear ungrammatical. Because indicating each error in grammar or word use would be distracting and correcting all of the errors poses the risk of altering the meaning of the communications, we have quoted Curtright's written materials in their original form. See *State v. Heitman, ante* p. 185, 629 N.W.2d 542 (2001). See, also, *U.S. v. Poehlman*, 217 F.3d 692 (9th Cir. 2000).

Letters dated May 7, 1986, written by Curtright to the trial judge and the trial prosecutors were entered into evidence. Letters to trial counsel were also entered into evidence. In summary, in letters to the trial judge, Curtright initially indicated, inter alia, that he wished to receive the death penalty or otherwise he would appeal, but in subsequent letters and communications with trial counsel, Curtright ultimately indicated he did not want to appeal.

In the May 7, 1986, letter to the prosecutors, Curtright wrote, inter alia, "I want to give you my congratulation for your real great job on my case. I know you really deserve to hear that verdict, however; I do deserved, too." Curtright further wrote, "I hope you will work hard to get a judge put me on death penalty because I believe I deserve to have one, won't you?"

In a letter to the trial judge, Curtright wrote that he wished to receive the death penalty and expressed concern that his attorneys strongly opposed the death penalty. Curtright wrote to the trial judge, "You have the two choices: grant my wish on a death penalty or you will get my appeal . . . . Please think of 2 women was stabbed to die, therefore; you should put me to death." However, in a letter dated May 18, 1986, from Curtright to the trial judge, Curtright apologized for the earlier letter, saying that he understood the sentencing decision was the trial judge's to make and that he would abide by the trial judge's decision. Curtright further indicated that he had told his attorneys they could fight for a life sentence and that he would not press the trial judge to give a death sentence. In a letter written by

Curtright to trial counsel dated May 15, 1986, Curtright wrote, inter alia, "My decision is going to appeal my trial because I am intensely disagreeing the verdict . . . ."

Trial counsel testified that between the conviction on May 7, 1986, and the sentencing on July 3, as well as after sentencing, he had encouraged Curtright to appeal because trial counsel thought there were nonfrivolous appellate issues and that an appeal would be in Curtright's best interests. Trial counsel specifically recalled a conversation he had had with Curtright regarding the filing of an appeal, which conversation was in person using an interpreter on or near July 3, the day of sentencing. Trial counsel testified that he informed Curtright of procedures that would need to be followed to file an appeal, including deadlines and the preparation of an affidavit of poverty. Trial counsel testified that Curtright's responses made it clear that Curtright no longer wanted to appeal, and trial counsel paraphrased Curtright as saying, "I am not willing to appeal. I am guilty. I was wrong. I refuse to allow you to appeal the case. I will not sign an affidavit of poverty or in any other way to do this."

In a letter from Curtright to trial counsel dated July 20, 1986, which date followed sentencing but preceded the running of the time for filing an appeal, Curtright wrote, inter alia, "I have already decided not to file an appeal before the sentence, even though, no matter what I would get a death penalty or life sentence." The letter indicated that Curtright believed trial counsel would disagree with the decision not to appeal, stating, "This will be more harder for you to accept the fact what I'm telling this in response to your wishes of having an appeal." Curtright further stated, "Don't think of me being a nothing person who don't know what to do with the legal matter. I know what I'm doing because I understand what it's going on." Curtright concluded the letter, "Sorry, there won't have an appeal for my rest of life. I'll not be sorry what I decided. I trust God's will more than myself."

Trial counsel also testified regarding a conversation he had had with Curtright using the TDD, which conversation he recalled as taking place near the end of the time to file an appeal. A transcript of the conversation was entered into evidence. In the conversation, Curtright asked what trial counsel planned to

do in response to his letter indicating he did not want to appeal. Trial counsel responded that he would be disappointed but would stop working on the issues. Later in the conversation, trial counsel said, "I think we could debate the issue of the appeal, but when all the arguments are given, I must accept your decision. So I will, although, as you know I very much do not want to." Trial counsel testified that he then presented his reasons why he thought Curtright should appeal. Curtright responded to each of the reasons and concluded that he and trial counsel had different views of the issue. Curtright said, "Please, please, please accept my decision. But please don't think that I don't know what I am doing. I know what I do and talk about. . . . I am very delightful to see my case is in the garbage right now, and my mind is clearing out." Trial counsel responded,

> I want to tell you that I do really believe that you know what you are doing and I accept your decision. Probably I should tell you that under Nebraska law if you do not appeal, you may not be able to change your mind later, which means that you probably cannot bring a motion for post conviction relief and probably that means that you will not be eligible to bring a federal application or a writ of habeas corpus, but I think you understand that your decision is yours to make.

Curtright also testified at the evidentiary hearing. Curtright testified, inter alia, that he did not always understand what trial counsel was telling him about the legal proceedings, that trial counsel was unable to explain the appeal process in terms Curtright could understand, and that Curtright simply indicated that he understood even though he did not. Curtright also testified that prior to trial, he had discussed with trial counsel getting a more experienced lawyer but that nothing was done in that regard. Curtright further testified that after trial, he went back and forth as to whether he wanted to file an appeal and had discussed with trial counsel getting a new lawyer for the appeal because he was dissatisfied with trial counsel's performance. Curtright conceded, however, that he told trial counsel he did not want to file an appeal.

On April 17, 2001, the district court entered an order denying and dismissing Curtright's motion for postconviction relief.

Upon its review of the evidence, the district court found that Curtright directed trial counsel not to appeal. The district court also found that the evidence showed that Curtright was aware of his rights of appeal and that he knowingly directed trial counsel not to appeal. With respect to the absence of an appeal, the district court concluded that Curtright had not received ineffective assistance of counsel because Curtright had instructed trial counsel not to file an appeal. The district court further disposed of all other claims in Curtright's postconviction motion by concluding that because the other claims raised by Curtright in his motion for postconviction relief could have been raised on a direct appeal, such issues were waived and could not be raised in a postconviction action since no appeal had been taken at Curtright's direction. Curtright appeals the district court's denial of his motion for postconviction relief.

## ASSIGNMENTS OF ERROR

Curtright asserts, restated, that the district court erred in these postconviction proceedings by (1) determining that trial counsel was not ineffective when he did not file a direct appeal on Curtright's behalf, (2) failing to rule in Curtright's favor on his remaining trial-related claims and by determining that such claims were waived because they were not raised in a direct appeal, and (3) denying Curtright's motion requesting preparation of a bill of exceptions of the trial.

## STANDARDS OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Thomas, ante* p. 138, 629 N.W.2d 503 (2001).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State v. Hunt, ante* p. 648, 634 N.W.2d 475 (2001).

## ANALYSIS

After the postconviction evidentiary hearing, the district court found that Curtright had directed trial counsel not to file an

appeal and that as a consequence, Curtright had not received ineffective assistance of counsel when trial counsel did not in fact file a direct appeal. Based on the foregoing, the district court concluded that Curtright's remaining trial-related claims were waived because they could have been raised in a direct appeal. The district court also determined that there was no need to order the preparation of a bill of exceptions from the trial and sentencing because such bill of exceptions would relate to trial issues, the appeal of which had been waived, and it would not aid in the determination of any issue properly before the district court.

We first consider Curtright's assignment of error with respect to the district court's determination that trial counsel was not ineffective when he did not file a direct appeal. In arguing that his trial counsel was ineffective by failing to file an appeal, Curtright relies extensively on the U.S. Supreme Court's decision in *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). Curtright asserts that in order to resolve whether counsel was deficient "for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other," "courts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" 528 U.S. at 477. Based on these statements in *Flores-Ortega*, Curtright claims that the district court erred by failing to address the reasonableness of trial counsel's conduct with respect to taking an appeal. Because we determine that the district court's finding that Curtright told his attorney not to appeal is not clearly erroneous, the district court was not required to engage in the reasonableness analysis urged by Curtright.

With respect to cases where no appeal was taken, the Court noted in *Flores-Ortega* two extremes where effectiveness of counsel is not at issue. The Court first noted that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* The Court then stated, "At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* The Court noted that the question it faced in *Flores-Ortega* concerned

those cases somewhere in the spectrum between these two extremes and stated:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal.

528 U.S. at 478.

■ Because Curtright expressly directed counsel not to file an appeal, the present case is not one of those circumstances addressed in the discussion in *Flores-Ortega* regarding a defendant who has not clearly conveyed his wishes one way or another but instead is a case at one end of the spectrum where a defendant explicitly tells his attorney not to file an appeal. Where a defendant has instructed trial counsel not to appeal, such a defendant "plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe v. Flores-Ortega,* 528 U.S. at 477.

In the present case, the record shows that counsel and Curtright meaningfully consulted about nonfrivolous grounds for an appeal and the district court found that Curtright explicitly informed counsel that he did not want an appeal. Based on the evidence presented at the evidentiary hearing, such finding by the district court was not clearly erroneous and therefore we do not disturb such finding on appeal. See *State v. Thomas, ante* p. 138, 629 N.W.2d 503 (2001).

■ We have stated that in order to obtain a new direct appeal as postconviction relief, the defendant must show, by a preponderance of the evidence, that the defendant was denied his or her right to appeal due to the negligence or incompetence of counsel, and through no fault of his or her own. *State v. Hess,* 261 Neb. 368, 622 N.W.2d 891 (2001). In the present case, the absence of an appeal was not due to negligence or incompetence of counsel, but instead was due to the express instructions of Curtright directing counsel not to file an appeal. See *Roe v. Flores-Ortega,* 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

We therefore conclude that the district court did not err in its conclusion that Curtright's counsel was not ineffective when he did not file an appeal.

■ In his second assignment of error, Curtright raises claims involving trial issues which could have been raised on direct appeal had Curtright not instructed counsel to forbear filing a direct appeal. A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Brunzo, ante* p. 598, 634 N.W.2d 767 (2001).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State v. Hunt, ante* p. 648, 634 N.W.2d 475 (2001). As a matter of law, we conclude that the district court did not err when it determined that consideration of the remaining claims was waived when Curtright instructed trial counsel not to appeal and such claims were thus procedurally barred. See *id.* The assignment of error encompassing purported errors at trial is without merit.

As his final assignment of error, Curtright claims that the district court erred in the postconviction proceedings by refusing to direct preparation of the bill of exceptions. Because the bill of exceptions from the trial would have been useful only to assess claimed trial errors, the evaluation of which were procedurally barred, the district court did not err in these postconviction proceedings in denying Curtright's motion to order the preparation of a bill of exceptions of the trial. This assignment of error is without merit.

## CONCLUSION

The district court was not clearly wrong when it found that Curtright had instructed trial counsel not to file an appeal. Thus, we conclude that the district court did not err in its conclusion that Curtright's trial counsel was not ineffective when he did not in fact file an appeal. The issues raised by Curtright in his motion for postconviction relief relating to purported trial errors were waived because they could have been raised in a direct appeal which Curtright directed trial counsel not to file. The dis-

trict court did not err when it concluded consideration of these issues was procedurally barred. The district court did not err in denying Curtright's motion for an order directing the preparation of a bill of exceptions of the trial because such bill of exceptions would have been useful only in the present proceeding to evaluate issues which Curtright waived by not appealing. Having considered and rejected each of Curtright's assigned errors, we conclude that the district court's decision denying postconviction relief was correct and is therefore affirmed.

AFFIRMED.