STATE OF NEBRASKA, APPELLEE, V.
RANDY DRINKWALTER, APPELLANT.
720 N.W.2d 415

Filed August 22, 2006. No. A-04-988.

P. Stephen Potter, P.C., for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

INBODY, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

Randy Drinkwalter appeals from an order of the district court for Cherry County, Nebraska, denying his motion for postconviction relief. Drinkwalter's motion was premised upon the notion that one cannot be convicted of both an unintentional crime—manslaughter—and an intentional crime—use of a weapon to commit a felony. Because Drinkwalter's convictions of such crimes are the result of a plea bargain, we reject his claim

and affirm the denial of Drinkwalter's motion for postconviction relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Drinkwalter was originally convicted in 1990 of first degree murder and use of a weapon in the commission of a felony for beating his grandmother to death with a hammer and stabbing her in the face with a knife. On March 1, 1991, Drinkwalter was sentenced to death on the murder conviction and 6 to 12 years' imprisonment on the use of a deadly weapon conviction.

Drinkwalter appealed his convictions and sentences to the Nebraska Supreme Court. See *State v. Drinkwalter*, 242 Neb. 40, 493 N.W.2d 319 (1992). In addition to Drinkwalter's appointed counsel, Leonard P. Vyhnalek, Drinkwalter's family hired another attorney, David C. Huston, to assist in the appeal. The Supreme Court reversed the decision and remanded the cause for a new trial due to evidentiary errors and to comments made by the trial judge to the jury in its preliminary instructions. See *id.* The Supreme Court noted that "[o]n appeal, the defendant does not challenge the sufficiency of the evidence to sustain his conviction." *Id.* at 42, 493 N.W.2d at 322.

After the Supreme Court reversed the decision and remanded the cause, Drinkwalter began preparations for the new trial. The trial judge held five hearings from April 29 to July 9, 1993. During the April 29 hearing, the trial judge informed Drinkwalter of his right to a jury trial and the right to appeal. Drinkwalter acknowledged that he understood what the trial judge told him. The trial judge also explained the charges—first degree murder and using a deadly weapon to commit a felony—and the fact that if convicted, the sentences would run consecutively. Next, the trial judge informed Drinkwalter of the pleas available to him, including pleas of not guilty, guilty, or no contest. The trial judge told Drinkwalter that for purposes of sentencing, a plea of no contest "has the same effect as if you plead guilty," which effect included the waiver of all the rights the court had previously explained. Drinkwalter acknowledged that he understood the pleas available to him and that his attorneys advised him to stand mute before the court. The trial judge then entered a plea of not guilty for Drinkwalter.

Before the retrial began, Drinkwalter's counsel and the prosecutors entered into plea negotiations. As a result, a plea agreement was reached on the day that jury selection was to begin. The agreement was that the first degree murder charge would be amended to a manslaughter charge but that the crime of use of a deadly weapon to commit a felony would still be part of the charges. The trial court examined Drinkwalter about the plea agreement and found that he was acting freely, voluntarily, and intelligently. The State amended the information by interlineation. Drinkwalter stated that he remembered and understood his constitutional rights. After a thorough examination, the trial court found Drinkwalter to be sufficiently competent and intelligent. The trial court explained both the charges against him and the maximum penalties available upon convictions of the crimes, including how the sentences would run consecutively. Drinkwalter told the trial court that his attorneys had explained all of his rights to him, that he was satisfied with their services, and that they had done a competent job. Important for this appeal, the trial court informed Drinkwalter that a no contest plea would waive any defect in the proceedings to that point and Drinkwalter acknowledged that he understood. Drinkwalter entered no contest pleas to the charges of manslaughter and use of a deadly weapon to commit a felony, which pleas the court accepted, and the court found him guilty of the two charges.

On July 9, 1993, Drinkwalter was sentenced to 6 years 8 months' to 20 years' imprisonment on the manslaughter conviction and 6 years 8 months' to 20 years' imprisonment on the use of a weapon to commit a felony conviction, with the sentences to be served consecutively. The trial court filed an order on July 16, 1993, correcting the credit for time previously served by Drinkwalter. No direct appeal was filed.

On August 4, 2003, Drinkwalter filed a verified motion for postconviction relief alleging amongst other assertions that had he known that "he could not have been convicted of Use of a Weapon in conjunction with the manslaughter charge, he would not have pled guilty to such charge, and [would have] instead elected to go to trial." An evidentiary hearing was granted, and counsel was appointed for Drinkwalter. Drinkwalter did not attend the postconviction hearing on July 28, 2004, and did not

testify in any format, such as by deposition. After the hearing, the trial judge denied the motion for postconviction relief, finding that Drinkwalter entered his plea freely, intelligently, and voluntarily and that Drinkwalter thereby waived every defense to the charges. The trial judge also found that there was neither ineffective assistance of counsel nor prosecutorial misconduct. Drinkwalter timely appeals.

## ASSIGNMENTS OF ERROR

Drinkwalter assigns seven errors and advances three arguments that, regardless of how stated, are all premised upon the proposition that a criminal defendant cannot be convicted of the intentional crime of use of a weapon to commit a felony when the underlying felony is an unintentional crime, such as manslaughter. The assignments of error raise this issue in the context of "plain error" by the court which accepted his plea, as well as in the context of ineffective assistance of counsel.

## STANDARD OF REVIEW

A criminal defendant requesting postconviction relief must establish the basis for such relief, and the factual findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Hunt*, 262 Neb. 648, 634 N.W.2d 475 (2001). Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.*

## ANALYSIS

We begin by recalling that a criminal defendant seeking postconviction relief has the burden of establishing a basis for such relief, *State v. Harton*, 230 Neb. 167, 430 N.W.2d 313 (1988), and that such relief is available only when a constitutional right has been infringed or violated, *Kerns v. Grammer*, 227 Neb. 165, 416 N.W.2d 253 (1987). The Nebraska Supreme Court has adopted the two-prong test set forth by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), for proving a claim of ineffective assistance of counsel. See *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993), *disapproved on other grounds, State v.*

*Canbaz*, 270 Neb. 559, 705 N.W.2d 221 (2005). To sustain a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient, meaning that counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area, and (2) such deficient performance prejudiced the defense, that is, a demonstration of reasonable probability that, but for counsel's deficient perform-ance, the result of the proceeding would have been different. See, *Strickland, supra*; *Nielsen, supra*. Additionally, errors which were known to the defendant at trial and which were not raised on direct appeal are waived in subsequent postconviction pro-ceedings. See, *State v. Curtright*, 262 Neb. 975, 637 N.W.2d 599 (2002); *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000); *State v. Smith*, 256 Neb. 705, 592 N.W.2d 143 (1999); *State v. Malcom*, 12 Neb. App. 432, 675 N.W.2d 728 (2004).

Here, Drinkwalter alleges in his verified motion that had he known that "he could not have been convicted of Use of a Weapon [an intentional crime] in conjunction with the man-slaughter charge [an unintentional crime], he would not have pled guilty to such charge, and [would have] instead elected to go to trial." When attacking plea-based convictions, in order to satisfy the prejudice requirement in the context of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled and would have insisted upon going to trial. *State v. Wakeman*, 231 Neb. 66, 434 N.W.2d 549 (1989).

In attempting to meet the burden of establishing a basis for postconviction relief, Drinkwalter's appointed counsel offered into evidence the deposition of Huston, Drinkwalter's attorney during the direct appeal of the first trial as well as during the second trial and the plea agreement, and the deposition of one of two prosecuting attorneys during both the first trial and the plea agreement. In addition to the depositions, Drinkwalter's counsel offered a copy of the information; the journal entries for the plea agreement and the sentencing; the commitment; the order cor-recting and modifying the sentence; the affidavit of Vyhnalek, his other attorney; a transcription of the plea and sentencing pro-ceedings; and 20 exhibits from such proceedings. The district court received such evidence, and the parties stipulated that no

direct appeal was taken by Drinkwalter after the plea agreement. Drinkwalter did not testify in person or by deposition at the postconviction hearing.

Drinkwalter's evidence reveals that after the remand for a new trial from the Nebraska Supreme Court, the trial judge thoroughly reviewed the charges, the potential sentences, and the effects of a no contest plea, including that such would be a waiver of every defense to the charges.

In *State v. Zarate*, 264 Neb. 690, 694, 651 N.W.2d 215, 221 (2002), the court detailed the defense counsel's obligation in the plea agreement process as follows:

> "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), quoting *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.'" *Hill*, 474 U.S. at 56-57, quoting *Tollett v. Henderson*, 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973).

Drinkwalter did not present any evidence that Vyhnalek and Huston did not properly explain to him either the charges or his options. And most notably, Drinkwalter did not present any evidence whatsoever that such lawyers did not discuss the crux of his postconviction action, which is the notion that he could not be convicted of an intentional crime such as use of a weapon to commit a felony when the underlying felony was an unintentional crime such as manslaughter, a proposition we will refer to as the "*Ring-Pruett* rule." See, *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002); *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989). As said, Drinkwalter's claim for postconviction relief rests, in one way or another, entirely on this proposition. Therefore, Drinkwalter clearly failed to satisfy his burden of proof under *Zarate, supra*, as outlined above, to show

that his attorneys performed deficiently in the advice given him concerning the plea agreement. Despite this complete failure of proof, we feel that it is appropriate to address Drinkwalter's arguments centering upon the *Ring-Pruett* rule.

*Plea Agreement to Charges of Manslaughter and Use of Weapon.*

Drinkwalter alleges that the district court erred in its interpretation of the law as it pertains to whether he could be convicted of use of a weapon to commit a felony when the underlying charge is an unintentional crime and when, as in his case, a conviction results from a plea agreement, not a trial.

The Nebraska Supreme Court in *Pruett, supra*, relying on its decision in *Ring, supra*, held that when the underlying felony for the use of a weapon charge is an unintentional crime, the defendant cannot be convicted of use of a weapon to commit a felony. As a result, the *Pruett* court vacated the defendant's jury conviction and sentence for use of a weapon to commit the underlying felony of manslaughter, an unintentional crime. We note that the defendant was convicted by a jury and that no plea agreement was involved.

*Ring, supra*, the predecessor case to *Pruett*, reaches the same result but has a slightly different rationale. The *Ring* court found that in order to convict the defendant of the use of a deadly weapon charge under Neb. Rev. Stat. § 28-1205 (Reissue 1985), the State had to prove the defendant used his vehicle (the weapon) "for the purpose of committing a felony" rather than just using it when committing the felony. (Emphasis omitted.) 233 Neb. at 725, 447 N.W.2d at 911. Given that the evidence established that the defendant attempted to avoid the collision which resulted in the motor vehicle homicide conviction by applying the brakes of his vehicle, the *Ring* court found that there was insufficient proof that the defendant was using his vehicle for the purpose of committing a felony. Therefore, the court vacated the defendant's use of a weapon conviction.

With this background of the *Ring-Pruett* rule in place, including the fact that *Pruett* can be seen as establishing a more absolute rule than was articulated in *Ring*, we turn to *State v. Burkhardt*, 258 Neb. 1050, 607 N.W.2d 512 (2000), which is precisely on point in all respects to the instant case. Pursuant to

a plea agreement, Jeffrey Burkhardt pled guilty to one count of manslaughter and one count of use of a firearm to commit a felony, in exchange for the State's amending its charge of first degree murder to manslaughter and filing no further charges. *Id.* The trial court in *Burkhardt* determined that a factual basis had been established, that the plea agreement had been explained, and that the plea was knowingly, voluntarily, and intelligently made. Burkhardt was convicted of both charges and was sentenced to 15 to 20 years' imprisonment for manslaughter and 12 to 30 years' imprisonment for use of a weapon to commit a felony, with the sentences to be served consecutively.

▮ Burkhardt appealed, and relying upon *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989), he argued that he could not be convicted of manslaughter and use of a weapon to commit a felony. It is noteworthy that at the time of Drinkwalter's plea agreement, the state of the law was the same as when the Nebraska Supreme Court decided Burkhardt's appeal—*Ring* had been decided but the decision in *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002), had not yet come down. Therefore, for Drinkwalter's appeal, *Burkhardt* is the seminal case. The Supreme Court rejected Burkhardt's argument premised on *Ring*, stating: "The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional." *Burkhardt*, 258 Neb. at 1053, 607 N.W.2d at 515. And, while under *Ring* and now *Pruett*, a dual charge of manslaughter and use of a weapon under the applicable version of § 28-1205 may well be subject to a motion to quash, the court in *Burkhardt* said that all defects not raised in a motion to quash are taken as waived by a defendant pleading the general issue. *Burkhardt, supra*, citing *State v. Roucka*, 253 Neb. 885, 573 N.W.2d 417 (1998). Therefore, Drinkwalter, like Burkhardt, has waived any claim that he cannot be convicted via a plea agreement of both an unintentional felony—manslaughter—and an intentional felony—use of a weapon to commit a felony.

▮ Additionally, we find it noteworthy that Drinkwalter's plea agreement was specifically made as an "*Alford* plea," which in our view further supports our conclusion that pursuant to *Burkhardt, supra*, Drinkwalter has waived any claim based on

the *Ring-Pruett* rule. The nature of an *Alford* plea was detailed in *State v. Beach*, 211 Neb. 660, 666, 319 N.W.2d 754, 757 (1982), as follows:

In *State v. Leisy*, 207 Neb. 118, 295 N.W.2d 715 (1980), citing *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), we held that a plea of guilty, voluntarily and intelligently made, might be accepted even though the defendant professes his innocence, provided there is a factual basis for a finding of guilty. Actually, *Alford* imposes one additional requirement, and that is that the judge in accepting the plea must have inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence. "Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt. . . . Because of the overwhelming evidence against him, a trial was precisely what neither Alford nor his attorney desired. Confronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30-year term." *Id*. at 37.

Although we do not detail all of the plea-taking colloquy involving counsel, Drinkwalter, and the trial judge, we do point out that the judge succinctly boiled the *Alford* plea concept down to its essence by asking Drinkwalter if he understood that such concept allows defendants to plead to a crime they are not admitting they actually did, "but that it's such a good bargain that they can't resist it." Drinkwalter responded affirmatively when the judge asked him, "[I]s that the position that you're taking today?" In *Beach, supra*, the court examined the trial judge's inquiry which attempted to "resolve the apparent conflict between 'the waiver of trial and the claim of innocence.'" 211 Neb. at 667, 319 N.W.2d at 757 (holding that inquiry made by trial court was insufficient to resolve apparent

conflict between waiver of trial and claim of innocence). In the instant case, the trial judge made careful inquiry about the *Alford* plea, whether it was in Drinkwalter's best interests, and, of course, the trial judge was fully aware that Drinkwalter had been tried previously, found guilty of first degree murder, and sentenced to death. Thus, the conflict between the waiver of trial and the claim of innocence was obviously resolved—evidenced by Drinkwalter's attorney's statement that "[Drinkwalter] would not quarrel with the facts raised by [the county attorney]."

In conclusion, as a result of the holding in *State v. Burkhardt*, 258 Neb. 1050, 607 N.W.2d 512 (2000), and the buttressing effect of the "irresistible" *Alford* plea bargain, Drinkwalter's claim for postconviction relief to set aside his conviction for use of a weapon to commit a felony on the basis of the *Ring-Pruett* rule fails. He has clearly waived any such argument.

*Ineffective Assistance of Counsel.*

■ Clearly, the exception to Drinkwalter's waiver of all defenses is that in making the plea, his counsel performed deficiently to his prejudice. As previously stated, to establish that he or she was denied effective assistance of counsel, the defendant first must show that counsel's performance was deficient, meaning that counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Second, the defendant must make a showing that he or she was prejudiced by the actions or inactions of his or her counsel by demonstrating, in the context of a plea as here, a reasonable probability that, but for counsel's deficient performance, he or she would have insisted on proceeding to trial rather than taking the plea bargain. See *State v. Zarate*, 264 Neb. 690, 651 N.W.2d 215 (2002). The two-prong test for an ineffective assistance of counsel claim need not be addressed in order. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000).

Drinkwalter received significant benefit from the plea agreement, because in the first trial, he had been sentenced to death for the first degree murder conviction and 6 to 12 years' imprisonment on the use of a weapon to commit a felony conviction.

After the Supreme Court reversed the decision and remanded the cause for a new trial, Drinkwalter faced the charges of use of a weapon in the commission of a felony and first degree murder again, which could mean a death sentence again or life in prison without parole. He entered into negotiations for a plea agreement. The State offered a greatly reduced charge of manslaughter, a Class III felony, which is punishable by a maximum of 20 years' imprisonment, a $25,000 fine, or both, and a minimum of 1 year's imprisonment, and the State retained the charge of using a weapon to commit a felony, a Class III felony.

Drinkwalter did not show that he was not advised by counsel of the holding of *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989) (remembering that *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002), was not yet decided at the time of Drinkwalter's plea bargain), and he did not show that if he had been so advised, there was a reasonable probability that he would have insisted on going to trial. Notwithstanding the fact that Drinkwalter did not present any evidence of deficient performance by his counsel, given his prior conviction and the obviously favorable plea agreement, Drinkwalter has not shown prejudice.

Even if Drinkwalter could overcome the waiver, the lack of evidence of deficient performance, and the lack of prejudice, the argument advanced here based on *Ring, supra*, was available to him on direct appeal. Drinkwalter's failure to raise on direct appeal the argument based on *Ring, supra*, acts as a procedural bar in this postconviction proceeding. See, *State v. Curtright*, 262 Neb. 975, 637 N.W.2d 599 (2002); *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000); *State v. Smith*, 256 Neb. 705, 592 N.W.2d 143 (1999); *State v. Malcom*, 12 Neb. App. 432, 675 N.W.2d 728 (2004). Moreover, Drinkwalter adduced no evidence that he directed his lawyers to file a direct appeal, which direction his lawyers failed to follow.

## CONCLUSION

For the multitude of reasons detailed above, the district court did not err in denying Drinkwalter's motion for postconviction relief.

AFFIRMED.